IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOEL FINK, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | NO. 08-5816 |
| v. | : | |
| | : | |
| GLOBAL EMPLOYMENT SOLUTIONS, INC., | : | |
|     Defendant. | : | |

**MEMORANDUM RE: DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                              **April 28, 2010**

## I.   Introduction

Plaintiff, Joel Fink ("Fink"), brings an employment discrimination claim arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., against his former employer, Global Employment Solutions, Inc. ("GES"). Presently before the Court is Defendant's Motion for Summary Judgment (Doc. No. 28). For the reasons discussed below, the Court will deny Defendant's motion.

## II.   Background and Contentions

This case arises out of Plaintiff Joel Fink's employment as an executive recruiter with Defendant GES. GES is a commercial staffing firm based in Littleton, Colorado, with twenty locations in the United States, including an office in Bala Cynwyd, Pennsylvania. Fink was hired an executive recruiter in the Bala Cynwyd office, and began his employment with GES on September 26, 2005. During the interview process, Fink informed GES of his diabetic condition.

Defendant contends that while Plaintiff's initial performance was strong, his production

in the second half of 2006 declined considerably, as Plaintiff brought in zero revenue in the months of July and August, 2006.  Defendant also contends that Plaintiff's two team members, for whom Plaintiff was responsible, were equally non-productive, and that Plaintiff's activity and prospects for potential new business were non-existent.  As a result of these issues, Defendant asserts that Plaintiff's supervisors began counseling Plaintiff to help him improve his performance, and that Defendant's supervisors warned Plaintiff that his failure to correct his performance could result in termination.  Nevertheless, GES decided in September, 2006 that Plaintiff should be terminated, and Plaintiff was subsequently terminated on September 21, 2006 – the day after he placed a call to GES' payroll and benefits department to inquire about GES's short-term and long-term disability plans.  Defendant contends that the GES employee with whom Plaintiff spoke about disability plans did not speak to anyone else at GES about Plaintiff's telephone call prior to Plaintiff's termination.

Plaintiff contends that he was terminated by GES in material part based upon his being a diabetic and his resultant needs which included having medical visits and doctor's appointments during the business day, wearing an insulin pump on his waist, wearing sneakers at work, and having to work at times in only socks, without wearing shoes or sneakers.

Plaintiff filed his Complaint against GES on December 15, 2008 (Doc. No. 1), and GES filed its Answer on January 12, 2009 (Doc. No. 3).  Defendant filed its motion for summary judgment on November 4, 2009 (Doc. No. 28).  Plaintiff  responded on November 23, 2009 (Doc. No. 31), and Defendant replied on December 7, 2009 (Doc. No. 36).

In its motion for summary judgment, Defendant GES argues that Plaintiff has no claim for unlawful termination because:  (1) Plaintiff is not "disabled" within the meaning of the ADA

because his diabetes does not substantially limit one or more of his major life activities; (2) even if Plaintiff could demonstrate that he was disabled under the ADA, GES terminated Plaintiff for the legitimate reason that Plaintiff's job performance was poor; and (3) Plaintiff cannot demonstrate evidence of pretext. Plaintiff responds by arguing that: (1) Plaintiff is "disabled" under the ADA because he was substantially limited in activities of central importance to his daily life; (2) there is a material dispute of fact as to whether Plaintiff was terminated or otherwise discriminated against by GES because of Plaintiff's disability and his status as a disabled person under the ADA; and (3) the record in this case would allow a jury to determine that the Plaintiff was discriminated against and/or terminated by GES because of his disability.

The Court held Oral Argument on these issues on March 11, 2010, prior to which the Court, in its Order of February 8, 2010 (Doc. No. 41), instructed the parties to focus their arguments on (1) whether Plaintiff was "disabled" for ADA purposes, and (2) whether Plaintiff can show pretext. At Oral Argument, the Court asked Plaintiff to file a supplemental brief containing evidence and citations to the record to support a finding that Plaintiff was fired in violation of the ADA, and that the reason given for the firing was pretextual. Plaintiff filed his supplemental brief on March 22, 2010 (Doc. No 48). Defendant responded on April 8, 2010 (Doc. No. 51), pursuant to the Court's Order of March 25, 2010 (Doc. No. 50). The matter is now fully briefed and ripe for disposition.

**III.   Analysis**

The ADA prohibits covered entities, including private employers like GES, from discriminating against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); Sutton v. United Airlines, Inc., 527 U.S. 471, 477-78 (1999).

Unlawful discrimination includes terminating an individual because of his disability.  See 42 U.S.C. § 12112(a).  In cases involving discrimination claims brought under the ADA, courts apply the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See, e.g., Parker v. Verizon Pa., Inc., 309 Fed. Appx. 551, 555 (3d Cir. 2009); see also Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 759, n.3 (3d Cir. 2004); Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).  The McDonnell Douglas framework "serves to bring the litigants and the court expeditiously and fairly to [the] ultimate question" of whether GES intentionally discriminated against Plaintiff.  Texas Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  In other words, the framework helps courts determine whether unlawful reasons motivated an employer to take an action against an employee.  Jackson v. Planco, 660 F. Supp. 2d 562, 577 (E.D. Pa. 2009).

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination.  Second, the burden shifts to the defendant employer "to articulate some legitimate, nondiscriminatory reason" for its termination of the plaintiff.  McDonnell Douglas, 411 U.S. at 802.  Third, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant employer's nondiscriminatory reason was pretextual.  Id. at 804; Burdine, 450 U.S. at 252-53.  A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Burdine, 450 U.S. at 256; see also Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)

### 1. Prima Facie Case

To establish a prima facie case under the ADA, a plaintiff must be able to show that he or

she (1) has a "disability," (2) is a "qualified individual," and (3) has suffered an adverse employment action because of that disability. Sulima v. Tobyhanna Army Depot, -- F.3d --, 2010 WL 1427542, at *4 (3d Cir. Apr. 12, 2010); Deane v. Pocono Medical Center, 142 F.3d 138, 142 (3d Cir. 1998). In the present case, the Court finds that Plaintiff has successfully established a prima facie case.

Regarding the first prong, the Third Circuit recently stated that to establish that a plaintiff has a "disability" for ADA purposes, a plaintiff must show that he or she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."[1] Sulima, -- F.3d --, 2010 WL 1427542, at *4 (quoting 42 U.S.C. § 12102(2)). Plaintiff contends that his diabetes substantially limits his ability to walk, type, and engage in manual tasks. Because walking is a considered to be a "substantial life activity," Plaintiff has met this prong. See Eshelman v. Agere Systems, Inc., 554 F.3d 426, 434 (3d Cir. 2009) (quoting 29 C.F.R. § 1630.2(i)) (while "[t]he ADA does not define 'major life activity,' . . . Equal Employment Opportunity Commission (EEOC) regulations define 'major life activities' as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" (emphasis added)); see also Johnson v. Amtrak, 2009 WL 1845226, at *6 (E.D. Pa. June 26, 2009) ("Major life activities 'refers to those

---

[1] A plaintiff can qualify as an individual with a "disability" if a plaintiff can show that he or she (1) has a physical or mental impairment that substantially limits a major life activity, (2) has a "record" of such an impairment, or (3) is "regarded as having such an impairment." Maresca v. Blue Ridge Communications, 2010 WL 407127, at *2 (3d Cir. Feb. 5, 2010); Marinelli v. City of Erie, Pa., 216 F.3d 354, 359 (3d Cir. 2000) ("Both parties concede that [plaintiff] could not qualify as disabled under the two latter provisions listed above (i.e., either having a record of or being regarded as having an impairment); as a result, [whether plaintiff is "disabled" under the ADA] turns exclusively on [the first provision:] whether [plaintiff] introduced sufficient evidence [that] he suffered from 'a physical or mental impairment that substantially limit[ed] one or more [of his] major life activities.'").

activities that are of central importance to daily life,' and includes 'functions such as caring for one's self, performing manual tasks, <u>walking</u>, seeing, hearing, speaking, breathing, learning and working.'" (emphasis added) (citations omitted)).

Regarding the second prong, a "qualified individual" is defined as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." <u>Turner v. Hershey Chocolate USA</u>, 440 F.3d 604, 611 (3d Cir. 2006) (quotation omitted). In the present case, Plaintiff is a qualified individual, as there is no dispute that he was able to perform the essential functions of his job.

Regarding the third prong, Plaintiff has adduced sufficient facts to show that he suffered an adverse employment action because of his disability. The favorable inference the Court must, at this stage of the case, draw from the facts Plaintiff himself has presented indicates that there is a genuine issue of material fact in regards to whether there was a causal relation between Fink's firing and his disability. Thus, the Court finds that a jury could conclude that Plaintiff suffered an adverse employment action related to his disability. For this reason, Plaintiff has met his burden to establish that he "suffered an adverse employment decision because of discrimination." <u>Gagliardo v. Connaught Labs.</u>, 311 F.3d 565, 568 (3d Cir. 2002). As such, plaintiff has made out all three parts of his prima facie case.

  **2.**  **<u>Legitimate, Non-Discriminatory Reason For Termination</u>**

Under <u>McDonnell Douglas</u>, once Plaintiff has established a prima facie case, the burden then shifts to GES to articulate a legitimate, non-discriminatory reason for terminating Plaintiff. 411 U.S. at 802. The Third Circuit has classified the employer's burden at this stage as "relatively light," and in the present case, GES simply has to introduce evidence "which, taken as

true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes, 32 F.3d at 763. GES asserts that it terminated Plaintiff because of his poor job performance, which included two consecutive months of bringing in zero revenue, the lack of prospects for earning future revenue, and the poor performance of the two employees that Plaintiff oversaw. Thus, GES has stated a legitimate, non-discriminatory reason for firing Plaintiff: poor job performance. For this reason, the Court proceeds to the pretext analysis in the third stage of the McDonnell Douglas burden shifting framework, which requires that Plaintiff show that the proffered reason is a pretext for discrimination. McDonnell Douglas, 411 U.S. at 802-05; Thimons v. PNC Bank, N.A., 254 Fed. Appx. 896, 898 (3d Cir. 2007).

### 3. Pretext

To establish pretext, Plaintiff must present some evidence by which a reasonable factfinder could either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Thimons, 254 Fed. Appx. at 898 (citing Fuentes, 32 F.3d at 764). Plaintiff cannot simply show that the employer's decision was wrong or mistaken; "[r]ather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Fuentes, 32 F.3d at 765 (internal quotations omitted).

In the present case, there is a conflict between Plaintiff's affidavits and various evidence proffered by Defendant, including the depositions of Fred Viarrial (GES' former Chief Operating

Officer and current Vice President of Human Resources and Operations) and Craig Kasper (GES' Senior Vice President of Professional Staffing), as to exactly on what basis GES decided to terminate Plaintiff.  A jury could find material conflicts between the factual accounts given by Viarrial and Kasper.  Specifically, there are contradictions as to whether Plaintiff's termination was based generally on poor performance, or on the Personal Success Indicator ("PSI") records, the "Perm Stack Ranking" documents, or the bi-weekly commission reports; and as to whether there has been full production by Defendant of these documents.  On the morning Plaintiff was terminated, he was not given a specific reason for his termination; only after Plaintiff protested did Plaintiff's immediate supervisor, Bill Kilgour, tell him – without providing any detail – that Plaintiff was being fired due to lack of productivity.  (Kilgour Dep. Sept. 17. 2009 at 162-64.)  Plaintiff has testified that he was never made aware of complaints about his performance prior to being terminated, and believed that he was performing productively.

     The Court concludes that Plaintiff has demonstrated inconsistencies or contradictions in GES' proffered reason for terminating him, such that Plaintiff has presented sufficient evidence of pretext to survive Defendant's summary judgment motion.  It cannot be said that in the present case, there are no genuine issues of material fact regarding the pretext issue or the circumstances of Plaintiff's termination.  To the contrary, the exact circumstances of Plaintiff's termination, and the "perception of the decision maker" when Plaintiff was terminated, <u>Billet v. CIGNA Corp.</u>, 940 F.2d 812, 825 (3d Cir. 1991), are material factual questions that remain in dispute, such that granting summary judgment at this time would be inappropriate.

### IV.     <u>Conclusion</u>

     For the aforementioned reasons, Defendant's motion for summary judgment is denied.

     An appropriate Order follows.

A:\Fink v. Global - MSJ Memo.wpd